421 A.2d 1081

**COMMONWEALTH of Pennsylvania**

v.

**Melvin SHAW, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1979.

Filed Sept. 23, 1980.

Petition for Allowance of Appeal Denied April 21, 1981.

---

576

D. Michael Emuryan, Milmont Park, for appellant.

Guy Messick, Assistant District Attorney, Media, Vram Nedurian, Jr., Newtown Square, for Commonwealth, appellee.

Before WICKERSHAM, BROSKY and EAGEN, JJ.*

PER CURIAM:

On May 9, 1975, Melvin Shaw was sentenced to concurrent terms of eleven and one–half to twenty–three months imprisonment following his conviction of theft by unlawful taking and conspiracy. He filed a direct appeal therefrom

* Chief Justice MICHAEL J. EAGEN of the Supreme Court of Pennsylvania, is sitting by designation.

in this court, and we affirmed the judgments of sentence. Subsequently, Shaw was granted parole which ran to September 24, 1977.

On May 31, 1978, a private complaint was filed alleging that Shaw committed criminal offenses on June 22, 1977. Indictments were later returned charging Shaw with theft by failure to make required disposition of funds, theft by unlawful taking, theft by deception, and deceptive business practices. On February 6, 1979, Shaw entered a plea of guilty to deceptive business practices. The other charges were nolle prossed.

On or about February 22, 1979, the Delaware County Probation Office sent Shaw written notice that the guilty plea evidenced a parole violation and that a parole revocation hearing would be conducted on March 13, 1979. This notice was mailed to Shaw, but delivery was refused. However, Shaw was advised by his parole officer by phone of the parole revocation hearing.

At the hearing on March 13, 1979, Shaw appeared and moved that the proceedings be deferred until after disposition of a petition to withdraw his guilty plea of February 6, 1979. This motion was denied and the hearing proceeded.

In connection with the plea to deceptive business practices, Shaw's parole officer testified that, on May 31, 1978, a complaint was filed charging that, on June 22, 1979, Shaw was given a check for $3,000 as payment on account for the purchase of an automobile but neither the car nor the money was delivered, and that, on February 6, 1979, Shaw plead guilty to deceptive business practices and was ordered to make restitution. The parole officer also testified that, in making restitution which was a condition of his parole, Shaw was required to pay $100 per month but had not fulfilled this condition. The record of the guilty plea was then introduced into evidence without objection.

Shaw did not challenge the evidence of the guilty plea at the revocation hearing but challenged the authority of the court to proceed to determine if a parole violation had

occurred while the motion to withdraw the guilty plea was outstanding. Shaw then offered to prove that the date of the deceptive business practice was not that shown on the indictment and that he attempted to make payments to resolve what basically was a civil matter. The court declined this offer of proof and adjourned until 2 p. m. The judge directed all parties to return at that time to continue the hearing.

Court reconvened at 2 p. m., but Shaw failed to appear. The court proceeded with another matter and reconvened the parole revocation hearing at 3 p. m. Shaw still had not arrived. The court then revoked Shaw's parole and sentenced him to a term of not less than two nor more than four years imprisonment. A bench warrant was then issued. Three days later, the court, realizing the illegality of the sentence, entered an order vacating the sentence and then resentenced Shaw to pay a fine of ten dollars and the costs of prosecution, and to undergo imprisonment in the county prison for the balance of the term of his original sentence, to wit, ten months and twenty-six days.

On March 23, 1979, Shaw filed a petition for reconsideration of the order revoking parole alleging that the petition to withdraw the guilty plea to deceptive business practices had been granted and the charge had been nolle prossed.

On March 29, 1979, the court entered a citation against Shaw to show cause why he should not be held in contempt of court for his failure to appear at the hearing when it reconvened on March 13, 1979. No answer was ever filed.

At a hearing on the petition for reconsideration of the order revoking parole on April 10, 1979, Shaw's attorney stated that Shaw had gone into hiding on March 13, 1979 and remained in hiding until March 23, 1979, the date of his hearing on the motion to withdraw the guilty plea. Shaw then testified as to the circumstances of his guilty plea. He stated that the district attorney's office had originally agreed to drop the charges made in the private complaint if he would pay the victim by February 5, 1979, the trial date, but he did not and the district attorney then prepared to go

to trial; and, that he plead guilty. The court noted that Shaw failed to inform the judge at his hearing to withdraw the guilty plea that he was a fugitive from his parole revocation hearing. The court then denied the petition for reconsideration.

On the same day as the reconsideration hearing, the court held a hearing on the contempt citation. The Commonwealth presented testimony by Shaw's parole officer as to Shaw's failure to return to the parole revocation hearing. The parole officer testified that, several days after the revocation hearing, he received a telephone call from Shaw who indicated he was still in the area and had left the hearing because he wanted to straighten out his business and lessen the burden of business affairs on his wife. The Commonwealth then offered the record of the March 13, 1979 hearing and the record of the reconsideration hearing which contained an admission by Shaw that he consciously did not appear at the reconvening of the revocation hearing.

Shaw then testified as to his reasons for not returning to the March 13, 1979 revocation hearing. He stated that his wife was more important than the court; that he feared jail; that he wanted to straighten out his business; and, that he wanted to lift the burden from his wife. Shaw further stated that he had run his business from a phone booth and did not reappear until March 23, 1979, the date of the hearing on the petition to withdraw his guilty plea. Finally, he admitted that he did not attempt to contact the revocation hearing judge to explain why he did not appear and that he made a conscious decision not to return to the revocation hearing.

The court found Shaw guilty of contempt of court and sentenced him to a term of three months in the county jail. This appeal followed.

■ Shaw contends the decision to revoke his parole was an abuse of discretion. Shaw first argues the revocation of his parole at the conclusion of his parole revocation hearing was improper because the revocation was based on a guilty plea which was under attack. This argument is meritless.

At the time of the parole revocation order, Shaw stood convicted by his own plea of having committed a crime while on parole. The fact that the guilty plea was subsequently permitted to be withdrawn does not, in itself, render the revocation order illegal. Cf. *Commonwealth v. Davis*, 234 Pa.Super. 31, 336 A.2d 616 (1975). *A fortiori*, we find no abuse of discretion here because a valid guilty plea existed at the time of the parole revocation hearing, and sufficient evidence was presented to warrant the revocation.

■ Shaw next argues that the court abused its discretion in denying his motion for reconsideration because at the time of the reconsideration hearing, the guilty plea had been withdrawn. Shaw therefore contends the evidentiary predicate on which the revocation of parole was based no longer existed.

The resolution of this question depends upon the reason for which the guilty plea was allowed to be withdrawn. Only if the reason for the withdrawal of the guilty plea brought into question the veracity of the admission of involvement in criminal activity included in the plea would the resultant withdrawal destroy the probative value of that admission to evidence criminal activity.

In *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973), an incriminating statement given by the parolee was admitted over objection during the revocation hearing. Later, evidence of the statement was suppressed and ruled inadmissible at the trial on the charges admitted therein. The Supreme Court ruled this did not invalidate the revocation order because the suppression was for a reason which did not destroy the probative value of the statement. The same rationale governs here.

■ Shaw's next contention is that there was insufficient evidence to find him guilty of that type of contempt of court for which imprisonment may be imposed.[1]

1. Technically, the contempt order was an independent final order from which a separate appeal should have been filed. But, since the Commonwealth does not advance this position and since the pro-

Section 4131 of the Judicial Code, 41 Pa.C.S.A., classifies penal contempts, inter alia, as follows:

"The power of the several courts of this Commonwealth to issue attachments and to inflict summary punishments for contempts of court shall be restricted to the following cases:

\* \* \* \* \* \*

(2) Disobedience or neglect by officers, parties jurors or witnesses of or to the lawful process of the court."[2]

Section 4132 of the Judicial Code, 42 Pa.C.S.A., provides the punishment of imprisonment for contempt as provided in 42 Pa.C.S.A. § 4131 "shall extend only to such contempts as shall be committed in open court, and all other contempts shall be punished by fine only." In this regard, failure of a defendant to appear on scheduled dates in a court convened and declared open for the transaction of its proper business has been held to be in "open court," thus permitting that defendant to be punished by imprisonment where that failure is contemptuous, see n. 2. *Commonwealth v. Ferrara*, 487 Pa. 392, 409 A.2d 407 (1979).

More refined, Shaw's argument is that 42 Pa.C.S.A. § 4132 limits punishment by imprisonment for contempts under 42 Pa.C.S.A. § 4131 to situations wherein the contemptuous conduct occurs *in the presence of the court.* But 42 Pa.C.

ceedings were intertwined, we shall review the contempt order as if separately appealed.

Also, the Commonwealth argues that the Superior Court does not have jurisdiction from final orders of the Court of Common Pleas in matters of direct criminal contempt. 42 Pa.C.S.A. § 722(4); *In re Ebo*, 244 Pa.Super. 163, 366 A.2d 1243 (1976). However, Pa.R.A.P. 741 and 24 Pa.C.S.A. § 704 specifically state the time in which an objection to jurisdiction must be filed. Instantly, the Commonwealth did not file its objection timely. Therefore, the jurisdiction of this court may be perfected if we accept jurisdiction. In the interest of judicial economy, we will accept jurisdiction and consider this issue on its merits.

2. *Commonwealth v. Garrison*, 478 Pa. 356, 386 A.2d 971 (1978), in reviewing subsection (2), held that contempt under that section is justified only if the contemnor had notice of the specific order and the act constituting the violation was volitional. Instantly, both of these requirements have been met, and Shaw's argument to the contrary is meritless.

S.A. § 4132 limits the use of imprisonment not to conduct occurring *in the presence of the court*, compare 42 Pa.C.S.A. § 4131(3), but to conduct occurring *in open court*, and, as we have pointed out, in open court includes the conduct involved herein. *Commonwealth v. Ferrara*, supra.

Shaw also argues that the failure to provide a jury trial vitiates the contempt finding. However, our Supreme Court has held that, where the sentence actually imposed is not greater than six months, a defendant need not be afforded a jury trial. *Commonwealth v. Mayberry*, 459 Pa. 91, 327 A.2d 86 (1974).

■ Shaw next contends that the sentence imposed, after the finding of a parole violation, of ten months and twenty-six days was excessive under the circumstances. We find this claim to be waived. Pa.R.Crim.P. 1410 provides that a motion to modify sentence must be filed within ten days of the imposition of sentence, thereby giving the sentencing court the first opportunity to modify the sentence. This was not done; therefore, the issue has not been preserved for our review. See *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

■ Shaw also alleges that his counsel, not present counsel, at sentencing for the parole violation, was ineffective for not making a motion for the sentencing judge's recusal. Shaw argues that the comments of the sentencing judge displayed obvious animosity. Most of the judge's comments which allegedly evidence animosity were made subsequent to March 16, 1979 or the date on which sentence was imposed following revocation of parole. Counsel cannot be faulted for failing to seek recusal at sentencing because of judicial conduct which occurred subsequent to sentencing. As to the comments made at sentencing, they were, for the most part, not such as would have presented counsel with an issue of arguable merit regarding recusal because, given the facts of this case, they merely represented, albeit strongly, what the facts established about Shaw and his conduct, and hence, can be viewed as statements of the reasons for the

584

sentence imposed. Since the recusal issue was not of arguable merit, counsel cannot be faulted for failing to seek recusal of the sentencing judge. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).

Judgments of sentence affirmed.