437 A.2d 1195

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Catherine MAURIZIO.**

Supreme Court of Pennsylvania.

Submitted Sept. 15, 1981.

Decided Dec. 17, 1981.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Pittsburgh, for appellant.

Michael W. Zurat, Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

Appellee, Catherine Maurizio, was served with a lawful subpoena directing her appearance as a Commonwealth wit-

ness at the homicide trial of Richard Marchese. Because she failed to appear, appellee was arrested pursuant to a bench warrant issued by the trial court. Following a hearing, the trial court ruled that appellee's failure to appear at the Marchese trial constituted indirect criminal contempt of court. Appellee was sentenced to pay a fine of $300.

The Commonwealth filed a direct appeal to this Court, and now argues that the trial court committed an error of law in ruling that appellee's conduct constituted only indirect criminal contempt. We believe, however, that the Commonwealth's appeal must be quashed.

It has long been well-settled that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution prevents the prosecution from appealing a verdict of acquittal. *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). Further, the verdict of acquittal need not be expressed to allow application of the aforementioned principle. *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).[1] Even where the acquittal is the result of an error of law, the judgment of acquittal bars any retrial. *Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962),[2] *Commonwealth v. Haines*, 410 Pa. 601, 190 A.2d 118 (1963). Over a century ago, this Court stated:

"It must be remembered that criminal contempt of court is a specific criminal offense. It is punished sometimes by indictment, and sometimes in a summary proceeding, as it was in this case. In either mode of trial, the adjudication against the offender is a conviction, and the commitment

1. In *Green*, the defendant was tried for murder and the Court informed the jury that they could find defendant guilty of either murder of the first degree, or murder of the second degree. The jury, without making any express finding on murder of the first degree, convicted the defendant of murder of the second degree. Following a retrial, the Court ruled that the implied acquittal of the former offense precluded retrial on that charge.

2. In *Fong Foo*, the trial court directed, without any authority, the jury to return verdicts of acquittal as to all defendants. Despite the clearly erroneous action by the trial court, the Supreme Court held the prosecution could not appeal from the judgments of acquittal.

in consequence is execution: ([Kearney's Case] 7 Wheat. 38.)"

*Passmore Williamson's Case*, 26 Pa. 9 (1855).

■ There are two classes of criminal contempt recognized in this Commonwealth, i.e. direct and indirect. As we stated in *Commonwealth v. Marcone*, 487 Pa. 572, 579, 410 A.2d 759, 762–763 (1980):

> "The essence of [direct criminal] contempt is that the misconduct constitutes a direct affront to the dignity and authority of the court.... Where that disobedience or misbehavior occurs in the actual presence of the court or has the capacity of directly affecting the proceeding then in progress, it may be properly classified as a direct or the most grievous type of contempt. All other behavior which may have a more remote impact upon the dignity of the court and its ability to fulfill its responsibilities are classified as indirect criminal contempts."

In providing for the allowable punishments for contempt, the legislature has recognized the direct-indirect classification.

> "Except as otherwise provided by statute, the punishment of imprisonment for contempt as provided in Section 4131 (relating to classification of penal contempts) shall extend only to such contempts as shall be committed in open court, and all other contempts shall be punished by fine only."

Act of July 9, 1976, P.L. 586, No. 142, § 2, as amended, 42 Pa.C.S.A. § 4132.

Both this Court and the legislature have thus recognized that conduct which constitutes indirect criminal contempt is less egregious than that required for direct criminal contempt. With that being so, we are unable to distinguish the instant case from one where either a judge or jury convicts a defendant of voluntary manslaughter and either expressly or impliedly acquits that defendant of the higher degrees of criminal homicide. In the latter situation, the Commonwealth could not appeal and argue that the defendant should have been convicted of either murder of the first degree or

murder of the third degree. Neither can the Commonwealth do so in the instant case. *Commonwealth v. Wimberly,* 488 Pa. 169, 411 A.2d 1193 (1980), *Commonwealth v. Haines, supra.*

Appeal quashed.[3]

LARSEN, J., filed a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent. The majority has misconstrued the issue in this appeal: the focus of the Commonwealth's appeal is not on whether appellee's contempt was direct or indirect, but is, rather, on whether appellee's contempt was committed in open court, thus justifying the imposition of a term of imprisonment.[1]

In this case, the trial court found that appellee's failure to appear in court pursuant to a lawful subpoena constituted indirect criminal contempt as defined in 42 Pa.C.S.A. § 4131(2),[2] and that the contempt was not committed in open court. In accordance with its findings, the trial court imposed a fine of $300, but no term of imprisonment.

The punishment of imprisonment for those criminal contempts defined in 42 Pa.C.S.A. § 4131 "shall extend only to such contempts as shall be committed in open court." 42 Pa.C.S.A. § 4132. Thus, the distinction between direct and

**3.** While appellee has never filed a motion to quash the appeal on these grounds, this Court can always raise its lack of jurisdiction sua sponte. *Commonwealth v. Saunders,* 483 Pa. 29, 394 A.2d 522 (1978).

**1.** The Commonwealth, in its brief before this Court, states: "The sole question before this Honorable Court is whether the contempt herein was a contempt in 'open court' warranting the imposition of a term of imprisonment."

**2.** The criminal contempt in this case is defined as follows:
The power of the several courts of this Commonwealth to issue attachments and to inflict summary punishments for contempts of court shall be restricted to the following cases:

(2) Disobedience or neglect by . . . witnesses of or to the lawful process of the court.

indirect criminal contempt is irrelevant for purposes of sentencing under this statute and for purposes of resolving this appeal.[3]

This Court has defined "open court" as a court " 'which has been formally convened and declared open for the transaction of its proper judicial business.' " *Commonwealth v. Ferrara*, 487 Pa. 392, 400, 409 A.2d 407, 411 (1979). The defendants in *Ferrara* were convicted of contempt for their failure to appear in court when required,[4] and this Court concluded that "[a]ppellants' failure to appear on the scheduled dates for arraignment and for trial were acts committed in 'open court' (that is, in a court 'convened and declared open for the transaction of its proper judicial business') and therefore, their contemptuous conduct can be punished by imprisonment." *Id.*

In this case, appellee was subpoenaed to appear as a witness in a criminal trial—in a court convened and declared open for the transaction of its proper judicial business. Therefore, appellee's contempt was likewise committed in open court. The trial court thus committed an error of law when it concluded that the contempt in this case was not committed in open court within the meaning of 42 Pa.C.S.A. § 4132, and that appellee could not be sentenced to a term of imprisonment for her contumacious behavior.

I am also at a complete loss as to the majority's reason for quashing the instant appeal. The majority cannot have it both ways: it cannot decide this appeal on the merits, and then quash the appeal because this Court lacks jurisdiction. Even though a direct appeal to this Court was not available in cases of indirect criminal contempt at the time this case

**3.** The majority's reliance upon double jeopardy arguments is likewise irrelevant for purposes of resolving this appeal.

**4.** The defendants in *Ferrara* were charged with contempt under Act of June 16, 1836, P.L. 784, § 23, 17 P.S. § 2041 (replaced as of June 27, 1978 by 42 Pa.C.S.A. § 4131), and, like appellee in the present case, were convicted of contempt for their "disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court."

arose,[5] appellee's failure to object to such a lack of jurisdiction operates to perfect this Court's jurisdiction:

> The failure of an appellee to file an objection to the jurisdiction of an appellate court within such time as may be specified by general rule, shall, unless the appellate court otherwise orders, operate to perfect the appellate jurisdiction of such appellate court . . . .

42 Pa.C.S.A. § 704(a). *See also* Rule 741(a), Pa.R.A.P.

I would vacate the judgment of sentence and remand this case for resentencing.

---

**5.** The instant appeal is from an order of the Allegheny County Court of Common Pleas filed on July 1, 1980. At that time, this Court had jurisdiction over direct appeals in cases of direct criminal contempt. *See* 42 Pa.C.S.A. § 722(4), as it existed prior to its amendment in September, 1980.