J-S45042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| STEPHANIE HEIMER | : | No. 696 MDA 2023 |

Appeal from the Order Entered April 10, 2023
In the Court of Common Pleas of Clinton County Criminal Division at
No(s):  CP-18-CR-0000362-2022

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JANUARY 08, 2024**

The Commonwealth of Pennsylvania appeals from the order entered by the Court of Common Pleas of Clinton County granting in part the petition for *habeas corpus* filed by Appellee Stephanie Heimer and dismissing one of Appellee's two charges for Hindering Apprehension.  After careful review, we reverse the trial court's order, reinstate the Hindering Apprehension charge, and remand for further proceedings.

We summarize the factual background of the case as follows: Clinton County Sheriff deputies were tasked with finding Joshua Andrus and Garrett Musselman, two individuals with bench warrants for their arrest. Notes of Testimony (N.T.), Preliminary Hr'g, 9/27/22, at 1-2.

---

[*] Former Justice specially assigned to the Superior Court.

On June 10, 2022, Deputy Scott Sorgen approached Appellee in the Weis grocery store in Lock Haven, Clinton County, as he had information that Appellee was in contact with Andrus and Musselman. *Id*. Deputy Sorgen informed Appellee that he was attempting to locate both men, who had bench warrants for their apprehension. *Id*. at 4. Appellee indicated that she knew both men and had dropped Andrus off at a relative's residence. *Id*. Deputy Sorgen gave Appellee his contact information, asked her to call him if she was contacted by either individual and warned her that she also could be arrested if she was caught with the men when they were apprehended. *Id.*

Three days later, on June 10, 2022, Deputy Sorgen sought to find Andrus and Musselman at Appellee's apartment, which was the address listed on the bench warrant forms as the last known address of both individuals. *Id*. at 5-6. When deputies knocked at the front and back doors, no one responded. *Id*. at 7-8. However, Deputy Sorgen noticed a curtain move in one of the apartment windows along with the silhouette of an unknown individual looking out of the window. *Id*. at 8.

As the deputies continued to knock on the back door of the apartment, Appellee looked out of the window and directed the deputies to come to the front door as the back door was blocked by a washing machine. *Id*. Appellee allowed the officers to enter the apartment and consented to a search of the residence. *Id*. at 9. Appellee denied that either Andrus or Musselman were there. *Id*.

However, the deputies discovered Musselman hiding in Appellee's son's room inside a closet that had been covered up by a mattress leaning on the wall. *Id*. at 10. Appellee claimed she did not know Musselman was there and continued to insist that she had not seen Andrus. *Id*. at 11. After Musselman was placed in custody, he informed the officers that Andrus was also in the apartment in another closet. *Id*. The deputies then discovered Andrus in a small hallway closet. *Id*. at 12.

Appellee was charged with two counts of Hindering Apprehension or Prosecution pursuant to 18 Pa.C.S.A. § 5105(a)(1). On September 27, 2022, Appellee appeared at her preliminary hearing and the magisterial district court judge bound both charges over for court.

On December 1, 2022, Appellee filed a petition for writ of habeas corpus asking for the dismissal of her charges. On February 28, 2023, the trial court held a hearing on the petition. On April 10, 2023, the trial court entered an order granting Appellee's motion in part by dismissing count 1 – Hindering Apprehension or Prosecution of Joshua Andrus and denying Appellee relief with respect to count 2 – Hindering Apprehension or Prosecution of Garrett Musselman.

On May 9, 2023, the Commonwealth filed a notice of appeal. The Commonwealth complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

The Commonwealth's sole claim on appeal is that the trial court erred granting Appellee's petition for writ of *habeas corpus* in part and in dismissing the charge of Hindering Apprehension with respect to Joshua Andrus.

It is well-settled that "the appropriate procedural means by which the accused may challenge the sufficiency of the Commonwealth's evidence at the pre-trial stage is a petition for a writ of *habeas corpus.*" ***Commonwealth v. Huggins***, 575 Pa. 395, 399, 836 A.2d 862, 864 n.2 (2003) (citing ***Commonwealth v. Hetherington***, 460 Pa. 17, 23-24, 331 A.2d 205, 209 (1975)).[1] "The question of the evidentiary sufficiency of the Commonwealth's *prima facie* case is one of law as to which this Court's review is plenary." ***Huggins***, 575 Pa. at 401, 836 A.2d at 865.

> At the pre-trial stage of a criminal prosecution, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt, but rather, its burden is merely to put forth a *prima facie* case of the defendant's guilt. ***Commonwealth v.***

---

[1] "When a charge is dismissed on a pre-trial writ of *habeas corpus,* the Commonwealth may appeal." ***Huggins***, 575 Pa. at 399, 836 A.2d at 864 (citing ***Commonwealth v. Hess***, 489 Pa. 580, 414 A.2d 1043, 1047 (1980)). This Court recently clarified the rules of appealability with respect to pretrial dismissal of charges:

> [in] cases where a ***magistrate*** dismisses charges at a preliminary hearing, [] such a decision is not a final determination, because it temporarily discharges the accused, leaving him subject to rearrest, and therefore is not appealable. [However, in] cases where a trial court grants a petition for Writ of *Habeas Corpus*, [] such a decision is final, because it discharges the petitioner completely, leaving the Commonwealth no redress, and therefore "is a proper subject for appellate review."

***Commonwealth v. Merced***, 265 A.3d 786, 791 (Pa.Super. 2021) (quoting ***Hetherington***, 460 Pa. 17, 331 A.2d at 208-209).

> ***McBride***, 528 Pa. 153, 595 A.2d 589, 591 (1991). A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense. ***Id.*** (citing ***Commonwealth v. Wojdak***, 502 Pa. 359, 466 A.2d 991 (1983)).

*Id*. at 866.

Appellant was charged with Hindering Apprehension or Prosecution under Section 5105(a) of the Crimes Code, which provides in relevant part:

> **(a) Offense defined.--**A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime or violation of the terms of probation, parole, intermediate punishment or Accelerated Rehabilitative Disposition, he:
>
> (1) harbors or conceals the other …

18 Pa.C.S.A. § 5105(a)(1) (emphasis added).

In this case, the trial court dismissed the charge against Appellee for Hindering Apprehension of Joshua Andrus, who was subject to a bench warrant after he failed to appear at a scheduled domestic relations proceeding for which Andrus had been served notice. The trial court found that Appellee did not hinder Andrus's apprehension, prosecution, conviction, or punishment for a "crime or violation of the terms of probation, parole, intermediate punishment or [ARD]" as set forth in Section 5105.

On appeal, the Commonwealth argues that the domestic relations court issued a bench warrant against Andrus for a "crime" within the meaning of

Section 5105 as Andrus faced criminal contempt penalties for his failure to appear.[2]

Section 4344 of the Domestic Relations Code provides that a party may be found in contempt for failing to appear at a domestic relations proceeding after being served notice:

> [a] person who willfully fails or refuses to appear in response to a duly served order or other process under this chapter may, as prescribed by general rule, be adjudged in contempt. *Contempt shall be punishable* by any one or more of the following:
>
> (1) Imprisonment for a period not to exceed six months.
>
> (2) A fine not to exceed $500.
>
> (3) Probation for a period not to exceed six months.

23 Pa.C.S.A. § 4344 (emphasis added).

While Section 4344 allows a trial court to find a party in contempt for willfully failing or refusing to appear when ordered to do so, we recognize that:

_____

[2] In support of this argument, the Commonwealth cites to an unpublished memorandum filed by this Court. However, we may not rely on this decision as this Court's internal operating procedures provide that:

> An unpublished memorandum decision filed prior to May 2, 2019, shall not be relied upon or cited by a Court or a party in any other action or proceeding, except that such a memorandum decision may be relied upon or cited (1) when it is relevant under the doctrine of law of the case, res judicata, or collateral estoppel, and (2) when the memorandum is relevant to a criminal action or proceeding because it recites issues raised and reasons for a decision affecting the same defendant in a prior action or proceeding.

210 Pa. Code § 65.37.

> [c]ontempt of court may be classified as civil or criminal in nature. The distinction between the two categories lies in the purpose behind the court's finding of contempt. If the dominant purpose of the court is to prospectively coerce the contemnor into compliance with the court's directive, the adjudication is one of civil contempt. However, if the court's dominant purpose is to punish the contemnor for disobedience of the court's order, the adjudication is one of criminal contempt.

*In Int. of E.O.*, 195 A.3d 583, 586 (Pa.Super. 2018) (quoting *In the Int. of C.W.*, 960 A.2d 458, 466 (Pa.Super. 2008) (citation omitted)). "(I)f the contempt consists solely of a past act, the only allowable judicial response is punitive, and any contempt adjudication must be criminal." *Cipolla v. Cipolla*, 398 A.2d 1053, 1055 (Pa.Super. 1979).

We emphasize that "[c]riminal contempt is a crime in every fundamental respect." *Id.* (citing *Codispotti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *In re Johnson*, 467 Pa. 552, 359 A.2d 739 (1976)). "Criminal contempt is a crime punishable by imprisonment or fine; sentences of imprisonment for contempt must be imposed according to the Sentencing Code." *In Int. of E.O.*, 195 A.3d at 586 (citing 42 Pa.C.S.A. § 9701).

In this case, the Commonwealth entered into evidence the warrant that the domestic relations court issued in connection with Andrus's failure to appear for a proceeding before that court despite receiving personal notice. As such, Andrus was accused of committing a violation of Section 4344 of the Domestic Relations Code, which constitutes contempt that is "punishable" by

criminal penalties, including a potential term of six months' imprisonment. As Andrus's failure to appear at the domestic relations proceeding was a past act, the only available judicial response would be punitive.

As such, we conclude that the Commonwealth presented a *prima facie case* that Appellee intended to hinder the apprehension, prosecution, conviction or punishment of Andrus for a crime, that is, criminal contempt. Accordingly, the trial court erred in dismissing Appellee's Hindering Prosecution charge with respect to Andrus.

For the foregoing reasons, we reverse the trial court's order, reinstate the charge of Hindering Prosecution, and remand the matter to the trial court for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/08/2024